# United States Bankruptcy Court

Northern District of Texas
Fort Worth Division

| | |
|---|---|
| In re:<br>Amanda Mae Melton,<br><br>    Debtor.<br><br>Richard Kevin Brown,<br>    Plaintiff,<br><br> vs.<br><br>Amanda Mae Melton,<br>    Defendant. | Bankr. Case No. 25-43217-elm7<br><br>Chapter 7<br><br><br>Adversary No. 25-04149-elm |

**DEFENDANT MELTON'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(6) AND 9(b)**

Defendant Amanda Melton ("Debtor" or "Amanda"), by and through undersigned counsel,
files this Motion to Dismiss Plaintiff's Second Amended Complaint (the "Complaint") pursuant
to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, as incorporated by Rules 7008,
7009, and 7012 of the Federal Rules of Bankruptcy Procedure, and respectfully states as follows.

## INTRODUCTION

1.      Plaintiff's Second Amended Complaint attempts to transform a failed business transaction
with a non-debtor into sweeping personal liability against the Debtor, Amanda Melton, based
largely on her status as the non-debtor's spouse and on isolated administrative communications.
The pleading relies on mainly conclusory allegations of partnership, conspiracy, and fraud while
largely failing to identify specific actionable conduct by the Debtor herself. As a result, it does not
plausibly allege that the Debtor entered any contract with Plaintiff, made materially false
representations with intent to deceive, or committed a willful and malicious injury within the
meaning of 11 U.S.C. § 523. Nor does it satisfy the heightened particularity required for fraud-

based claims under Rule 9(b). Because the Complaint substitutes labels and group allegations for well-pleaded facts showing personal wrongdoing by the Debtor, it fails to state claims upon which relief can be granted and should be dismissed, in whole or at minimum as to the claims asserted against Amanda Melton individually.

## PROCEDURAL POSTURE AND BASIS FOR RELIEF

2.     Plaintiff filed the Complaint asserting multiple causes of action against the Debtor, including claims for nondischargeability under 11 U.S.C. § 523(a)(2)(A) and § 523(a)(6), as well as various state-law claims.

3.     The Complaint fails to state claims upon which relief can be granted against the Debtor and fails to plead fraud-based allegations with the particularity required by Rule 9(b).

4.     Many allegations improperly group the Debtor together with her husband without distinguishing the Debtor's specific conduct, knowledge, or intent, thereby failing to provide fair notice of the claims asserted against her individually.

5.     The Complaint further contains conclusory assertions and legal labels unsupported by sufficient factual allegations to satisfy the plausibility standard of Rule 8(a), as interpreted by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

6.     To the extent Plaintiff asserts fraud-based claims, those claims must satisfy the heightened pleading requirements of Rule 9(b), which require a plaintiff to state with particularity the circumstances constituting fraud, including the specific statements, the speaker, the time and place of the statements, and why they were fraudulent.

7.     The Complaint does not satisfy Rule 9(b) because it fails to identify with specificity:

   a.   the particular misrepresentations allegedly made by the Debtor;

   b.   when and where any such statements were made;

c.  why the statements were false when made;

d.  the Debtor's alleged intent to deceive; and

e.  how Plaintiff relied on any statement attributable specifically to the Debtor.

8.  In addition, several counts assert liability against the Debtor based on theories such as partnership, conspiracy, or joint conduct without pleading facts sufficient to establish the required elements of those theories as to the Debtor personally.

9.  Accordingly, the Complaint should be dismissed in whole or in part pursuant to Rule 12(b)(6). Alternatively, the Court should require Plaintiff to provide a more definite statement under Rule 12(e) with respect to any claims that are so vague or ambiguous that the Debtor cannot reasonably prepare a response.

10.  This Motion is timely under Rule 7012 and is filed prior to the Debtor's responsive pleading. The Debtor expressly reserves all defenses under Rule 12 and Rule 7012, including those not addressed herein.

## FACTUAL BACKGROUND AS ALLEGED IN THE COMPLAINT

11.  For purposes of the Motion only, the Debtor summarizes the allegations of the Complaint and the documents attached thereto, without admitting the truth of an allegation.

a.  October 7, 2024: Plaintiff alleges he began discussions with Steve Melton regarding the restoration of the 1967 Chevelle. (Complaint ¶ 10; Complaint Ex. 33-1 at 20.)

b.  The Complaint alleges that Steve Melton operated a restoration business and solicited funds from Plaintiff for restoration work. (Complaint ¶ 10.)

c.  October 16, 2024: Plaintiff met with Steve Melton at his shop and purchased the vehicle in Austin. (Complaint Ex. 33-1 at 20.)

d. The Complaint alleges that the Debtor, Amanda Melton, transmitted by email a document titled "Service Agreement" relating to the restoration project. (Complaint ¶ 11; Complaint, Ex. 33-1 at 2.) The email was sent from an address associated with the Debtor's Stephenville Independent School District employment. (Id.) The email itself contains no substantive message text and does not include a signature block or identifying information for the Debtor within the body of the email. (Id.) **This is the only direct email Plaintiff alleges he received from Amanda Melton during the seven-month history of the restoration project.**

e. The attached agreement, captioned "Steve's Performance & Restoration," identifies Steve Melton as "Owner" and Kevin Brown as "Customer," and contains signature blocks for those parties only. (Complaint, Ex. 33-1 at 5.)

f. October 17, 2024 (5:31 PM): Plaintiff replied to the Debtor's email confirming that a wire transfer had been sent. (Complaint, Ex. 33-1 at 3.)

g. October 18-19, 2024: After an initial wire failed, Plaintiff sent $5,000.00 to Steve Melton via Zelle. (Complaint, Ex. 33-1 at 20.) On October 19, Plaintiff initiated a second wire transfer for $20,263.54 to Amanda. (Id.)

h. October 19, 2024: Plaintiff forwarded the wire confirmation to the Debtor's email address addressed to Steve Melton, stating, "Hopefully i got it right this time! Steve this is for the initial deposit ( i sent 5k through Zelle yesterday) I will need to spend some time on the TMI interior selections and will get you those funds when we are ready to place the order OK ?" (Complaint, Ex. 33-1 at 9-10)

i. Plaintiff alleges that he paid an initial deposit of $20,263.54, proof of which was transmitted to the Debtor. (Complaint ¶ 18a; Complaint, Ex. 33-1 at 9-10.) The

Complaint alleges that additional funds were later requested and paid in connection with the restoration project. (Complaint ¶ 12.)

j.  The Complaint further alleges that the Debtor communicated with Plaintiff by email and text message regarding invoices, documentation, and project status. (Complaint ¶ 18.)

k.  Plaintiff's Exhibits attached to the Complaint contain text messages in which the Debtor is alleged to have discussed invoices, files, and scheduling matters related to the restoration project:

    i.  The Complaint quotes a January 21, 2025 statement by Steve Melton that Amanda "is working on everything for us and will check everything." (Complaint ¶ 18b; Complaint, Ex. 33-1 at 14.)

    ii.  The Complaint alleges that when Plaintiff requested a build sheet and invoice prior to releasing funds, Steve Melton represented that the Debtor was responsible for preparing and sending those documents. (Complaint ¶ 18a) The cited exhibit, however, reflects communications dated February 20–21, 2025, indicating only that Amanda would be compressing and sending files by email. (Complaint, Ex. 33-1 at 11-13.)

    iii.  The Complaint further attributes to the Debtor a February 20, 2025, message stating that she was "compressing these files" and would send them when completed. (Complaint ¶ 18a, 18c; Complaint, Ex. 33-1 at 11-13.) **The exhibit reflects that this message was transmitted via text message from Steve Melton's phone**. (Id.)

iv.  Finally, the Complaint alleges that Steve Melton identified the Debtor as responsible for managing and administering invoices needed for insurance purposes. (Complaint ¶ 18d.) However, the cited exhibit reflects a text message *from Plaintiff* stating that Amanda was working on obtaining the invoices. (Complaint, Ex. 33-1 at 15.)

12.    The foregoing allegations summarize the communications identified in the Complaint and attached exhibits as involving the Debtor in the transaction alleged to have occurred over an approximate seven-month period.

13.    Other acts and communications reflected in the attached exhibits attribute substantive restoration updates and requests for payment primarily to Steve Melton. (See, generally, the factual allegations in the Plaintiff's Original Petition filed in 266th District Court, Erath County, Texas, Complaint, Ex. 33-1 at 20-22.)

## ARGUMENT & AUTHORITIES

14.    To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Under the standards established in *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*, a plaintiff's obligation to provide the grounds of their entitlement to relief requires more than mere labels, conclusions, or a formulaic recitation of the elements of a cause of action. The court is not bound to accept legal conclusions couched as factual allegations as true. Rather, the "plausibility standard" is met only when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

15.     Factual allegations that are merely consistent with a defendant's liability fall short.[1] Similarly, the court should not accept conclusory allegations, unwarranted factual inferences, or legal conclusions as true.[2] While legal conclusions may provide the framework of a complaint, they must be supported by factual allegations to meet the plausibility standard.[3]

16.     The Complaint does not plausibly allege any basis for holding Amanda Melton personally liable. It shows that Plaintiff contracted with Steve Melton, not the Debtor, and that her alleged involvement consisted primarily of administrative communications. The nondischargeability claims fail because the Complaint does not allege that *Amanda Melton, personally, made a single fraudulent representation* or committed a willful and malicious injury. The remaining state-law claims are derivative of the same insufficient allegations and rely on conclusory assertions of joint conduct. Accordingly, the Complaint fails to state a claim against Amanda Melton and should be dismissed under Rule 12(b)(6).

## I.     The Complaint Fails to Plead a Plausible Basis for Contractual Liability

### A.  The Complaint Does Not Allege That the Debtor Was a Party to the Contract

17.     As a threshold matter, a claim for nondischargeability presupposes the existence of a debt owed by the debtor to the creditor. Section 523 does not create liability; it merely determines whether an existing debt is excepted from discharge. Accordingly, Plaintiff must plausibly allege that Amanda Melton is personally liable to them under applicable non-bankruptcy law before any nondischargeability analysis can proceed.[4] Where a complaint fails to plead facts establishing that the debtor herself owes a debt to the plaintiff, whether based on contract, tort, or another legal

---

[1] *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).
[2] *Franklin v. City of Slidell*, 928 F. Supp. 2d 874, 879 (E.D. La. 2013) (the Court does not accept "conclusory allegations, unwarranted factual inferences, or legal conclusions" as true).
[3] *Id.*
[4] *See Chowdary v. Ozcelebi (In re Ozcelebi)*, 640 B.R. 884, 899 (Bankr. S.D. Tex. 2022); *Hollingsworth & Co. v. Nored (In re Nored)*, 302 B.R. 833, 840 (Bankr. N.D. Miss. 2003).

theory, the § 523 claims necessarily fail as a matter of law.[5] As shown below, the Complaint does not plausibly allege that the Debtor is personally obligated to Plaintiff under any viable theory of liability.

18.     To state a claim for breach of contract under Texas law, a plaintiff must allege the existence of a valid contract between the plaintiff and the defendant, performance by the plaintiff, breach by the defendant, and damages.[6] A defendant who is not a party to the contract cannot be liable for its breach absent a legally sufficient basis for derivative liability.[7]

19.     The Complaint fails to plausibly allege that the Debtor, Amanda Melton, entered into any contract with Plaintiff.

20.     Plaintiff alleges that he engaged Steve Melton to restore a vehicle and that Steve Melton operated the restoration business. (Complaint ¶ 10.) The only written agreement attached to the Complaint—the "Service Agreement"—identifies Steve Melton as "Owner" and Plaintiff as "Customer." (Complaint ¶ 11; Ex. 33-1 at 5.) The agreement contains signature blocks only for those two individuals and does not identify the Debtor as a contracting party. (Id.)

21.     Although Plaintiff alleges that the Debtor transmitted the Service Agreement by email, transmitting a document does not make the sender a party to the underlying contract. The Complaint alleges no facts showing that the Debtor signed the agreement, agreed to be bound by it, or otherwise manifested assent to contractual obligations.

22.     Accordingly, the pleadings do not plausibly establish privity of contract between Plaintiff and the Debtor.

---

[5] *Id.*

[6] *Ibarra v. Noah's Roofing & Contr.*, 657 S.W.3d 412, 418 (Tex. App. 2022).

[7] *See Gonzales Cnty. Water Supply Corp. v. Jarzombek*, 918 S.W.2d 57, 61 (Tex. App. 1996).

**B. Allegations of Administrative Communications Do Not Establish Contractual Liability**

23.   Contractual liability requires conduct reflecting mutual assent to be bound by its terms.[8] For example, a written draft of an agreement is prepared, submitted to both parties, and each of them expresses his unconditional assent thereto, there is a written contract.[9]

24.   Here, however, the Complaint relies primarily on allegations that the Debtor communicated with Plaintiff regarding invoices, documentation, files, or scheduling matters. (Complaint ¶ 18.)

25.   These allegations, even if accepted as true, do not plausibly establish that the Debtor mutually assented to any contractual obligations.

26.   The cited communications consist of:

- Debtor emailing the restoration agreement to Plaintiff,
- Debtor *receiving* confirmation of receipt of payment addressed to Steve,
- Statements by Steve Melton that files or invoices would be sent by Debtor,
- References by Steve Melton that the Debtor was working on documents, and
- Two text messages from Steve Melton's phone attributed to the Debtor stating that she was compressing files to transmit.

(Complaint ¶ 18; Ex. 33-1 at 9–15.)

27.   Such administrative or logistical communications are fully consistent with clerical assistance or participation in business operations and do not plausibly show that the Debtor personally contracted with Plaintiff or agreed to perform restoration services.

28.   Notably, Plaintiff's Original Petition filed in the 266th District Court, Erath County, Texas attributes the alleged negotiations, representations, performance obligations, receipt of funds, and failure to complete the restoration project primarily to Steve Melton and his business entities, with Amanda Melton mentioned chiefly in connection with transmitting documents or receiving funds. (See Complaint, Ex. 33-1 at 17 et seq.)

---

[8] *McGehee v. Endeavor Acquisitions, LLC*, 603 S.W.3d 515, 523 (Tex. App. 2020).
[9] *Id.*

### C. Conclusory Allegations of Partnership or Joint Liability Are Insufficient

29. Recognizing the absence of direct contractual privity, Plaintiff relies on conclusory allegations of a "general partnership" (Complaint ¶¶ 14–17, 20, 24–25, 28, 36–37) in an apparent effort to invoke imputation principles recognized in *Bartenwerfer*. However, *Bertenwerfer* dealt with California partnership law, and the Complaint fails to establish the applicability of any imputation under Texas law, even if the Court was convinced to impute its teachings.

30. However, the Complaint does not set out the elements required under Texas law nor does it tie facts related to such elements to support the claim.[10]

31. However, those allegations do not plead facts sufficient to establish a legally recognized partnership or agency relationship under Texas law, such as co-ownership, profit sharing, or mutual control. Under Texas law, without such factual allegations establishing a partnership or agency relationship,, imputation of another person's fraud to the Debtor is unavailable as a matter of law.

32. Legal conclusions unsupported by factual allegations are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678.

33. To plausibly plead a partnership under Texas law, a plaintiff must allege facts showing an agreement to carry on a business as co-owners, including elements such as sharing profits and losses, mutual control, and intent to form a partnership. The Complaint contains no specific factual allegations establishing these elements as to the Debtor.

34. Instead, the Complaint relies largely on Debtor's marital relationship to Steve Melton, her alleged assistance with documents or communications, and statements by Steve Melton describing her involvement.

---

[10] See Tex. Bus. Orgs. Code § 152.052 (LexisNexis 2025) (identifying five factors under Texas law to create a partnership)

35.     These allegations do not plausibly establish that the Debtor was a co-owner of the business or a contracting party. At most, they suggest that she provided assistance in connection with Steve Melton's restoration work.

36.     Similarly, allegations of conspiracy or joint liability cannot create substantive liability absent an underlying actionable claim against the Debtor. Conclusory assertions that defendants acted "together" or as partners are insufficient under *Twombly* and *Iqbal*.

### D.  The Complaint Impermissibly Relies on Group Pleading

37.     The Complaint frequently refers to "Debtor and her husband" or otherwise attributes conduct collectively without distinguishing the Debtor's specific acts, knowledge, or intent.

38.     Group pleading of this type fails to provide fair notice of the claims against an individual defendant and does not satisfy Rule 8(a). See *Twombly*, 550 U.S. at 555 (requiring factual allegations showing entitlement to relief).

39.     Without factual allegations tying specific contractual conduct to the Debtor personally, the Complaint does not plausibly state a claim for breach of contract or any derivative contractual liability.

### E.  Contract-Based Claims Should Be Dismissed

40.     Taking the well-pleaded facts as true, the Complaint alleges that (1) Plaintiff contracted with Steve Melton, (2) Steve Melton owned and operated the restoration business, (3) the written agreement identifies Steve Melton as the contracting party, and (4) the Debtor's alleged involvement consisted primarily of transmitting documents and communicating about administrative matters.

41. The only direct contact Plaintiff alleges the Debtor to have made were one email sent from her ISD employee email address, and two text messages from Steve Melton's phone during the seven-month history of the transaction.

42. The Complaint does not allege Plaintiff ever actually received the compressed files, invoices, build sheets or other documents from the Debtor.

43. These allegations do not plausibly support personal contractual liability against the Debtor.

44. Accordingly, any claims premised on breach of contract or derivative contractual liability against Amanda Melton should be dismissed pursuant to Rule 12(b)(6).

## II. Count I: The Complaint Fails to State a Claim Under § 523(a)(2)(A)

45. To state a claim under § 523(a)(2)(A), Plaintiff must plausibly allege that the Debtor herself made a materially false representation, knew it was false, intended to deceive Plaintiff, that Plaintiff justifiably relied on the representation, and that such reliance caused Plaintiff's loss. Because the claim sounds in fraud, it must also satisfy Rule 9(b)'s requirement to plead the "who, what, when, where, and how" of the alleged fraud.[11]

46. The Complaint identifies no statement by Ms. Melton that was false when made.

47. The Complaint does not identify any actionable misrepresentation made by Amanda Melton that induced Plaintiff to transfer funds. Plaintiff alleges that he engaged Steve Melton to perform restoration work and that Steve Melton operated the business. (Complaint ¶ 10.) The attached Service Agreement identifies Steve Melton not the Debtor as the "Owner." (Complaint ¶ 11; Ex. 33-1 at 5.)

---

[11] *Alameda Cnty. Employees' Ret. Assn. v. BP p.l.c. (In re BP p.l.c.)*, 2013 U.S. Dist. LEXIS 171459, at *48-49 (S.D. Tex. Dec. 2, 2013) (must specify each statement, identify the speaker, the when and where, and plead with particularity the contents of the false representations or why the statement is fraudulent); *Shellpoint Mortg. Servicing, LLC v. Barnett (In re Barnett)*, 2020 Bankr. LEXIS 2270, at *1 (Bankr. S.D. Tex. Aug. 25, 2020) (must specify who, what, when, where, and how for each factual allegation with detail).

48.     Again, the allegations regarding the Debtor consist of transmitting the agreement, receiving confirmation of payment, and two text communications about invoices and build sheets. (Complaint ¶¶ 11, 18.) These administrative communications do not plausibly constitute false representations regarding the restoration work or any material fact inducing payment. The Complaint itself acknowledges that substantive updates and requests for funds were primarily attributed to Steve Melton. (Complaint ¶ 13.)

49.     The specific statements attributed to the Debtor, such as that she would compress files and send documents, are logistical in nature and not alleged to have been false when made. (Complaint ¶ 18; Ex. 33-1 at 11–15.) Several cited statements made by Steve Melton describing her involvement are vague at best as to her alleged role. (Complaint ¶ 18a–d.)

50.     The Complaint also fails to plead facts showing that the Debtor knew any statement was false, intended to deceive Plaintiff, or that Plaintiff relied on any representation attributable to her rather than to Steve Melton. Nor does it identify which payments were induced by which statements.

51.     Instead, Plaintiff relies on group allegations that the Debtor and her husband acted together or as partners. Such conclusory assertions do not satisfy Rule 8(a) or Rule 9(b), particularly because nondischargeability under § 523(a)(2)(A) requires fraudulent conduct by the debtor personally.

52.     Taken as true, the allegations show at most that Plaintiff contracted with Steve Melton and that the Debtor assisted with communications and documentation. These facts do not plausibly establish that Amanda Melton obtained money by false pretenses, false representation, or actual fraud.

## Imputed Fraud Allegations

53.     While *Bartenwerfer v. Buckley*, 598 U.S. 69 (2023), confirms that § 523(a)(2)(A) may render a debt nondischargeable even where the debtor did not personally commit the fraud, that rule presupposes the existence of a legally cognizable partnership or agency relationship and fraud committed within the scope of that relationship. *Id.* at 76–80.[12] Absent well-pleaded facts establishing such a relationship under applicable state law, imputation is unavailable.

54.     The Complaint presupposes the existence of a valid partnership or agency relationship and fraud committed within the scope of that relationship. It pleads the existence of a "general partnership" in conclusory fashion, without factual allegations sufficient under Texas law to establish profit sharing, co-ownership, or mutual control.[13]

55.     The Complaint contains no allegation that Ms. Melton received, expected to receive, or had any right to receive a share of business profits. At most, Plaintiff alleges that funds were wired to an account associated with Ms. Melton, but receipt of funds alone does not establish a right to profits or co-ownership of a business.

56.     The Complaint identifies no agreement, statement, or conduct showing that Ms. Melton intended to enter a partnership with Steve Melton. There is no allegation of a written or oral partnership agreement nor any allegation that Ms. Melton represented herself to Plaintiff as a co-owner of the restoration business.

57.     Participation in clerical or administrative tasks does not constitute the right to control the business. The Complaint alleges only that Ms. Melton transmitted a contract, communicated

---

[12] In *Bartenwerfer*, the debtor's liability had already been established by a prior state-court judgment against both spouses, and the wife co-owned the property, signed the transfer disclosure statements, and participated as a seller in the transaction, whereas here the Complaint alleges no prior adjudicated liability, no co-ownership of the business or assets, no participation as a contracting party or seller, and at most administrative involvement by the Debtor in her husband's business.

[13] *See Auction Credit Enters., LLC v. Desouza (In re Desouza)*, 659 B.R. 288, 300 (Bankr. E.D. Tex. 2024) (debtor must be liable for that debt under state partnership law).

regarding invoices or files, and was described by Steve Melton as assisting with documentation. These allegations reflect administrative assistance, not managerial authority or decision-making power over business operations.

58.    The Complaint contains no factual allegation that Ms. Melton agreed to be responsible for business debts, contractual obligations, or losses. Absent such allegations, partnership liability cannot be inferred.

59.    The Complaint does not allege that Ms. Melton invested money, equipment, or other assets into the restoration business. Allegations that she communicated with Plaintiff or handled documents do not constitute a capital contribution.

60.    Because none of the statutory indicators of partnership are plausibly alleged, the Complaint fails to state a basis for imposing partnership liability or imputing Steve Melton's alleged conduct to Ms. Melton. The conclusory assertion that a "general partnership" existed is not entitled to a presumption of truth under *Twombly* and *Iqbal* and cannot sustain Plaintiff's claims

61.    Accordingly, Plaintiff's § 523(a)(2)(A) claim against the Debtor should be dismissed under Rule 12(b)(6). At minimum, Plaintiff should be required to replead with the particularity required by Rule 9(b).

### III.    Count II: The Complaint Fails to State a Claim under 11 U.S.C. § 523(a)(6)

62.    Section 523(a)(6) excepts from discharge debts arising from a "willful and malicious injury" by the debtor. This requires allegations that the debtor had a subjective intent to cause harm and that the injury was malicious (i.e., wrongful and without just cause or excuse). Under controlling Fifth Circuit precedent, the debtor must have intended the consequences of the act, not

merely the act itself, and the conduct must be targeted at the creditor or the creditor's property.[14]

Negligence, breach of contract, or even intentional acts that merely lead to injury are insufficient.[15]

63.     The Complaint does not plausibly allege that Amanda Melton personally committed a willful and malicious injury. Plaintiff alleges that he engaged Steve Melton to restore a vehicle and that Steve Melton operated the restoration business. (Complaint ¶ 10.) The Service Agreement likewise identifies Steve Melton not the Debtor as the contracting party. (Complaint ¶ 11; Ex. 33-1 at 5.)

64.     The allegations concerning the Debtor consist primarily of administrative communications relating to invoices, files, or documentation. (Complaint ¶ 18.) These facts do not plausibly show conduct directed at causing injury, much less conduct substantially certain to do so. The Complaint itself attributes substantive restoration updates and requests for payment primarily to Steve Melton. (Complaint ¶ 13.)

65.     To the extent Plaintiff alleges injury arising from failure to complete restoration work or misuse of funds, such allegations sound in contract or fraud and do not establish the distinct requirement of deliberate injury under § 523(a)(6). The Complaint contains no factual allegations that the Debtor intended to harm Plaintiff or acted with knowledge that harm was substantially certain to occur.

66.     Nor does the pleading identify any specific wrongful act by the Debtor such as conversion, destruction of property, or refusal to return property that could plausibly support a willful-and-malicious injury claim. Instead, Plaintiff relies largely on group allegations that the Debtor acted together with her husband. Such conclusory assertions are insufficient to impose nondischargeability based on personal misconduct.

---

[14] *Kawaauhau v. Geiger*, 118 S. Ct. 974 (1998).
[15] *Id.*

67.     First, the allegations describe the vehicle as being delivered to Steve Melton for restoration. The Complaint contains no factual assertion that Ms. Melton took custody of the vehicle, stored it, transported it, or otherwise exercised physical possession. Liability for conversion cannot be imposed absent allegations that the defendant had possession or control over the property at issue.

68.     Second, the pleadings attribute the restoration business, negotiations, and project performance primarily to Steve Melton. The allegations concerning Ms. Melton involve administrative communications and document handling, but not management of the vehicle itself. Without facts showing that Ms. Melton directed the vehicle's disposition or controlled access to it, the Complaint fails to establish the essential element of dominion.

69.     Third, the Complaint does not clearly allege a demand was made on Ms. Melton for the return of the vehicle. (Complaint ¶ 32; Complaint Ex. 33-1 at 28 ¶ 65.) But the alleged demand is based only on the group demand of "Defendants" in the underlying state court suit. (Id.) Where possession is initially lawful as alleged here, where the vehicle was voluntarily delivered for restoration, conversion generally requires a demand for return and refusal by the defendant. The Complaint alleges only that the vehicle has not been returned; it does not identify any specific demand made to Ms. Melton personally or any refusal by her. Absent such allegations, the pleadings do not establish wrongful retention attributable to this Defendant.

70.     The Complaint alleges no facts showing that Ms. Melton intended to deprive Plaintiff of the vehicle or knew that her conduct was substantially certain to do so. At most, the allegations suggest involvement in communications related to the restoration project. Such conduct does not support a plausible inference of deliberate injury.

71.     Taken as true, the allegations show at most that the Debtor assisted with communications in connection with a business transaction between Plaintiff and Steve Melton. These facts do not plausibly establish a deliberate or malicious injury by Amanda Melton.

72.     Accordingly, Plaintiff's claim under § 523(a)(6) should be dismissed pursuant to Rule 12(b)(6).

### IV.   State Law Claims (DTPA, Fraud, Conversion, Breach of Contract, Civil Conspiracy)

#### A.  Count VI: Texas Deceptive Trade Practices Act (DTPA)

73.     Plaintiff's DTPA claim likewise fails because it rests on the same deficient allegations of misrepresentation and contractual liability discussed in Sections I and II.

74.     The Complaint does not plausibly allege that the Debtor personally made false, misleading, or deceptive statements in connection with the sale of goods or services. The communications attributed to her concern invoices, files, or administrative matters and do not constitute actionable representations regarding the restoration work.

75.     Nor does the Complaint allege facts showing that Plaintiff relied on any statement by the Debtor as opposed to Steve Melton, whom Plaintiff engaged to perform the work.

76.     Accordingly, the DTPA claim against Amanda Melton fails to state a plausible claim for relief.

#### B.  Count VII: Common Law Fraud

77.     Plaintiff's common-law fraud claim is subject to Rule 9(b) and must be pleaded with particularity.

78.     As explained in Section II, the Complaint does not identify any specific false representation made by the Debtor, when it was made, why it was false, or how Plaintiff relied on it. Instead, the allegations rely on group pleading and statements primarily attributed to Steve Melton.

79.     The logistical communications attributed to the Debtor—such as sending documents or compressing files—do not plausibly constitute fraudulent inducements.

80.     Because the Complaint fails to plead the elements of fraud with the specificity required by Rule 9(b), the claim should be dismissed.

### C.  Count VIII: Conversion

81.     Plaintiff's conversion claim fails because the Complaint does not plausibly allege that the Debtor exercised dominion or control over specific property belonging to Plaintiff.

82.     The allegations concerning funds paid for restoration services sound in contract or fraud, not conversion. Money paid pursuant to a contract is not subject to conversion absent identification of a specific, segregated fund and wrongful control over it.

83.     The Complaint does not allege that the Debtor personally possessed or wrongfully retained any identifiable property of Plaintiff, nor does it allege facts showing that she refused a demand for return of such property.

84.     Accordingly, the conversion claim against the Debtor should be dismissed.

### D.  Count IX: Breach of Contract

85.     Plaintiff's breach-of-contract claim fails for the reasons set forth in Section I. The Complaint does not plausibly allege that Amanda Melton was a party to the Service Agreement or otherwise assumed contractual obligations to Plaintiff.

### E.  Count X: Civil Conspiracy

86.     Plaintiff's civil conspiracy claim fails because the Complaint does not plausibly allege the essential elements of conspiracy under Texas law.

87.     To state a claim for civil conspiracy, a plaintiff must allege: (1) a combination of two or more persons; (2) an object to be accomplished (either an unlawful purpose or a lawful purpose by

unlawful means); (3) a meeting of the minds on that object; (4) one or more unlawful overt acts; and (5) damages as a proximate result. Civil conspiracy is derivative and cannot exist absent an underlying tort. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983).

88.    As set forth in Sections I–III, the Complaint fails to plausibly allege any actionable underlying tort or independent wrongdoing by Amanda Melton. Without such predicate liability, the conspiracy claim necessarily fails.

89.    Such allegations are insufficient under *Twombly* and *Iqbal*. The Complaint pleads no specific facts showing that the Debtor agreed to participate in any fraudulent or unlawful scheme, knew of such a scheme, or intended to further it.

90.    At most, the allegations describe the Debtor assisting with communications or documentation in connection with Steve Melton's business activities. These facts do not plausibly establish participation in a conspiracy.

91.    Because the Complaint fails to plead both an underlying tort and a factual basis for an agreement or meeting of the minds involving the Debtor personally, the civil conspiracy claim against Amanda Melton should be dismissed pursuant to Rule 12(b)(6).

## REPLEADING SHOULD BE DENIED

92.    Plaintiff has already been afforded a prior opportunity to amend its pleading after the Debtor filed her initial motion to dismiss, and the Court granted leave to do so. See Adv. Dkt. No. 30. This adversary proceeding was filed on November 25, 2025, and the operative Complaint remains deficient despite that amendment. Where a party has previously been given an opportunity to cure pleading deficiencies but has failed to do so, further leave to amend may properly be denied.

93.    Allowing yet another opportunity to replead would be prejudicial to the Debtor, who has already been required to incur the expense and burden of responding to multiple iterations of the

claims. Rule 15 does not require endless opportunities to amend where a plaintiff has previously been given a fair chance to cure defects and has failed to do so. Under these circumstances, further amendment would be unjust and would unnecessarily prolong the litigation.

## CONCLUSION

94.     For all of the foregoing reasons, the Complaint does not plausibly allege that Amanda Melton is personally liable to Plaintiff under any legal theory. The well-pleaded facts show at most that Plaintiff contracted with Steve Melton and that the Debtor engaged in administrative communications, not actionable wrongdoing. Because the Complaint fails to state a viable claim under § 523(a)(2)(A), § 523(a)(6), or applicable state law, dismissal under Rule 12(b)(6) is warranted.

**FOR THESE REASONS**, Defendant respectfully requests that the Court grant this Motion and dismiss the Complaint as to Amanda Melton in its entirety, with prejudice, or, in the alternative, require Plaintiff to provide a more definite statement under Rule 12(e), and grant Defendant such other and further relief to which she may be justly entitled.

Respectfully submitted:


By: __/s/ Clayton L. Everett____
        Clayton L. Everett
State Bar No. 24065212
clayton@norredlaw.com
NORRED LAW, PLLC
515 E. Border St.
Arlington, Texas 76010
Telephone: (817) 704-3984
Counsel for Defendant

## CERTIFICATE OF SERVICE

I certify that I have this March 25, 2026, served a true and correct copy of the above document via the Court's ECF system upon all parties receiving notice through ECF, including the party below:

*Plaintiff's Counsel via ECF/CM:*
Cassie Meyer
The Allen Firm, PC
181 S. Graham Street
Stephenville, TX 76401

                                                            */s/ Clayton L. Everett*