# Exhibit P-003

Filed for Record at
7/25/2025 10:09 AM
Rebecca Facio
Clerk of the 266th District Court
Erath County, Texas

CAUSE NO. <u>25CVDC-00184</u>

| | | |
|---|---|---|
| **RICHARD KEVIN BROWN,** | § | **IN THE DISTRICT COURT** |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **266TH JUDICIAL DISTRICT** |
| | § | |
| **STEVE MELTON, AMANDA** | § | |
| **MELTON; DBA STEVE'S** | § | |
| **PERFORMANCE & RESTORATION;** | § | |
| **DBA ADVANCED PERFORMANCE** | § | |
| **AND RESTORATION; DBA** | § | |
| **ADVANCED AUTO BODY AND** | § | |
| **RESTORATION; DBA ADVANCED** | § | |
| **SERVICES; DBA ADVANCED PEST** | § | |
| **SERVICES; and ADVANCED BED BUG** | § | |
| **& PEST SERVICES, LLC,** | § | |
| **Defendants.** | § | **ERATH COUNTY, TEXAS** |

---

### PLAINTIFF'S ORIGINAL PETITION

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES RICHARD KEVIN BROWN,** Plaintiff, in the above-styled and numbered cause, and files Plaintiff's Original Petition, for cause of action against Defendants, STEVE MELTON, AMANDA MELTON; DBA STEVE'S PERFORMANCE & RESTORATION; DBA ADVANCED PERFORMANCE AND RESTORATION; DBA ADVANCED AUTO BODY AND RESTORATION; DBA ADVANCED SERVICES; DBA ADVANCED PEST SERVICES; ADVANCED BED BUG & PEST SERVICES, LLC, and in support thereof, respectfully shows the Court the following:

### I.   DISCOVERY CONTROL PLAN LEVEL

1.    Plaintiff intends for discovery in this case to be conducted under Level 2 of Texas Rule of Civil Procedure 190.3.

## II.   PARTIES AND SERVICE

2.   Plaintiff, Richard Kevin Brown, ("Brown") is an individual residing in Todos Santos, Baja California Sur, Mexico.  Pursuant to *Tex. Civ. Prac. & Rem. Code* § 30.014, the last three numbers of Plaintiff's Social Security number are 393 and the last three numbers of Plaintiff's driver's license are 558.

3.   Defendant, STEVE MELTON, ("Melton") is an individual residing in Erath County, Texas, and may be served with process at his residence at 3960 CR 156, Bluff Dale, TX 76433, his shop at 707 CR 177, Stephenville, TX 76401, or wherever they may be found.

4.   Defendant, AMANDA MELTON, ("Amanda") is an individual residing in Erath County, Texas, and may be served with process at 3960 CR 156, Bluff Dale, TX 76433, or wherever they may be found.

5.   Defendant, DBA STEVE'S PERFORMANCE & RESTORATION, may be served with process at any place in which Defendant, Steve Melton, may be served service of process.  Service of said Defendant as described above can be effected by personal delivery.

6.   Defendant, DBA ADVANCED PERFORMANCE AND RESTORATION, may be served with process at any place in which Defendant, Steve Melton, may be served service of process. Service of Defendant Melton as described above can be effected by personal delivery.

7.   Defendant, DBA ADVANCED AUTO BODY AND RESTORATION, may be served with process at any place in which Defendant, Steve Melton, may be served service of process. Service of Defendant Melton as described above can be effected by personal delivery.

8.   Defendant, DBA ADVANCED SERVICES, may be served with process at any place in which Defendant, Steve Melton, may be served service of process. Service of Defendant Melton as described above can be effected by personal delivery.

9.      Defendant, DBA ADVANCED PEST SERVICES, may be served with process at any place in which Defendant, Steve Melton, may be served service of process. Service of Defendant Melton as described above can be effected by personal delivery.

10.     Defendant, ADVANCED BED BUG & PEST SERVICES, LLC, is a Texas Limited Liability Company, with its principal place of business at 550 S Harbin Dr, PMB 136, Stephenville, TX 76041.  Defendant may be served by serving its registered agent for service of process, United States Corporation Agents, Inc., at 10601 Clarence Dr., Suite 250, Frisco, TX 75033, or wherever they may be found.

## III.    JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this dispute as the amount in controversy exceeds the minimum jurisdictional limits of this Court and falls within its general jurisdiction.

12.     Venue is proper and/or mandatory in Erath County, Texas, under Tex. Civ. Prac. & Rem. Code § 15.002 and Tex. Bus. & Com. Code § 17.56.  Specifically, all or a substantial part of the events or omissions giving rise to these claims occurred in Erath County.

13.     In accordance with Rule 47 of the Texas Rules of Civil Procedure, Plaintiff seeks monetary relief over $250,000 but not more than $1,000,000.00 excluding interest, statutory or punitive damages and penalties, and attorney fees and costs.

## IV.    CONDITIONS PRECEDENT

14.     All conditions precedent to Plaintiff's claims for relief have been performed or have occurred.  This includes proper notice and procedures to all parties where necessary;

notably, under the Texas Deceptive Trade Practices – Consumer Protection Act, Tex. Bus. & Com. Code §17.41 et seq., ("DTPA").

## V.    FACTUAL ALLEGATIONS

15.    On or about October 7, 2024, Melton and Plaintiff began discussions for Melton to build and restore a 1967 Chevrolet Chevelle (the "Chevelle") that Plaintiff intended to purchase.  On October 16, 2024, Plaintiff met Melton at his shop, located at 707 County Rd 177, Stephenville, TX 76401, to further discuss the project.  Subsequently, on the same date, the two went to Austin, Texas, where Plaintiff purchased the Chevelle, and they returned it to Melton's shop in Erath County.

16.    At all times relevant hereto, Steve Melton, and the DBA Defendants represented themselves as experienced and capable of performing high-quality automotive restoration work, including the restoration of classic vehicles such as the Chevelle.

17.    On October 17, 2024, Amanda Melton, Melton's wife and co-defendant, transmitted the Service Agreement for the Chevelle project to Plaintiff, utilizing her official Stephenville Independent School District employment email.  Plaintiff signed it that same day, returned the executed copy to the Defendants, and attempted a Wire Transfer to Steve's Performance & Restoration for $25,263.54.

18.    The following day, on October 18, 2024, Plaintiff learned the wire had failed, so he sent Melton $5,000.00 via Zelle, to get him started on the project.  On October 19, 2024, Plaintiff wired $20,263.54, the remaining balance of the contract to Amanda.

19.    Over the next seven months, the Defendants engaged in a deliberate scheme to extort more than $225,000.00 from Plaintiff under the pretense of performing labor and acquiring parts for the restoration of the Chevelle.  Defendants accepted these funds from

**PLAINTIFF'S ORIGINAL PETITION**                                                    **PAGE 4 OF 16**

Plaintiff with no genuine intent to fulfill their obligations under the agreement. Despite his representations, Melton failed to provide or deliver any of the parts he requested money for to purchase, and Melton failed to perform the restoration work in a timely manner—or at all—as promised. Instead, Defendants misappropriated the funds entrusted to them and repeatedly misrepresented the status of the restoration, including knowingly false claims regarding work performed, parts purportedly acquired, supporting documentation such as receipts, invoices, and photographs, and the completion and delivery of the vehicle.

20. Lies and misrepresentations were used incessantly by the Defendants to intentionally extend Plaintiff's discovery of the scam. The Plaintiff did not ascertain the full scope of the breach and deception until early May, at which point the Defendants' lies, deceptions, and evasions had finally become unsustainable. Plaintiff began to unravel the fraud, demanding Melton meet him at his Fort Worth storage unit—where parts were purportedly kept—and then travel to Melton's Stephenville shop to inspect the car's progress. Consistent with their prior conduct, Melton failed to honor the agreed-upon meeting. At this juncture, Plaintiff recognized the entire scheme was a fabrication and demanded the return of all funds the Defendants had illicitly obtained. Despite additional false representations that Defendants would return the funds or personal property, to date, the Defendants continue to wrongfully withhold the Chevelle, any parts allegedly purchased for it, and the funds obtained through their fraudulent scheme.

21. This endeavor transcended a mere car restoration for Plaintiff; it was the realization of a lifelong dream and a deeply personal passion project. For the past year, Plaintiff had meticulously poured his energy and vision into every detail of the vehicle, from individually selecting each part to specifying the precise interior stitching. The Defendants' subsequent

intentional actions did not merely cause financial loss; they knowingly ensnared Plaintiff in a protracted, costly, and emotionally devastating scam rooted in calculated deception and outright lies. The Defendants' conduct throughout this process was not only countless in its falsehoods but also heartless in its disregard for Plaintiff's investment and egregious in its deliberate infliction of distress. Indeed, the Defendants went so far as to cultivate a deceptive friendship with Plaintiff, only to exploit his vulnerabilities further when he and his wife encountered personal medical crises, viewing their compromised position as a renewed opportunity for additional financial advantage.

22.    After retaining legal counsel to advise and assist in recovering from the aforementioned fraud, Plaintiff uncovered a pattern of similar deceptive conduct by Melton. Notably, a judgment was rendered against Melton in Tarrant County for over $120,000.00 merely four days prior to his engagement with Plaintiff. The facts of that case are strikingly similar: Melton had agreed to restore a 1969 Mustang but instead misappropriated funds intended for parts and labor, failing to perform the promised work or comply with the agreement. Furthermore, Melton currently faces pending criminal charges in Tarrant County for theft ranging from $30,000.00 to $150,000.00, stemming from a 1967 Camaro. These documented instances provide compelling direct evidence demonstrating Melton's absence of mistake, lack of accident, motive, intent, preparation, plan, and knowledge of his fraudulent acts.

23.    Due to the Defendants wrongful actions and inactions, Plaintiff has suffered extensive damages which continue to accrue.

## VI.    CAUSES OF ACTION

### A.    VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT

24.    Plaintiff refers to and adopts all foregoing paragraphs as if fully set forth herein.

25.    Plaintiff is a consumer as defined by the Texas Business and Commerce Code § 17.45(4) because Plaintiff sought or acquired services from Defendants by purchase or lease.

26.    **Deceptive Acts or Practices.** Defendants engaged in false, misleading, or deceptive acts and practices in violation of the Tex. Bus. & Com. Code § 17.46(b), including but not limited to

a.    (5) Representing that goods or services had characteristics, uses, or benefits which they did not have;

b.    (7) Representing that goods or services were of a particular standard, quality, or grade when they were of another;

c.    (9) Advertising services with intent not to sell them as advertised;

d.    (13) Knowingly making false or misleading statements of fact concerning the need for parts, replacement, or repair service;

e.    (22) Representing that work or services have been performed on, when the work or services were not performed; and

f.    (24) Failing to disclose information concerning services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

27.    **Breach of Warranty.** Defendants are further liable to the Plaintiff under Sections 17.50(a)(2) of the DTPA for breach of express and/or implied warranties regarding its property management services:  specifically, the implied warranty of good and workmanlike performance.

28.    **Unconscionable Actions.** Defendants acted in an unconscionable action, or an unconscionable course of action as defined in Section 17.45(5), in that Defendants took advantage of the lack of knowledge, ability, or experience, of the Plaintiff to a grossly and unfair degree.

29.    Plaintiff reasonably relied on Defendants' false, misleading, or deceptive acts and/or the breach of warranty to Plaintiff's detriment, causing Plaintiff severe damages.

30.    Defendants committed these acts knowingly, having actual awareness, at the time of the act or practice complained of, of the falsity, deception, or unfairness of its conduct.  The Defendants also acted intentionally, with the specific intent that the Plaintiff-consumer would detrimentally rely on their falsity or deception.

31.    Plaintiffs seek recovery of their actual damages, mental anguish damages, and attorney's fees pursuant to Tex. Bus. & Com. Code § 17.50.  The Defendants' knowing and intentional acts and omissions proximately caused foreseeable economic harm to the Plaintiff.  Accordingly, the Defendants are liable to the Plaintiff for up to three times the amount of economic and mental anguish damages as provided for by Section 17.50(b)(1) of the DTPA.

B.    **BREACH OF IMPLIED WARRANTY OF GOOD AND WORKMANLIKE PERFORMANCE**

32.    Plaintiff refers to and adopts all foregoing paragraphs as if fully set forth herein.

---

33. In Texas, there is an implied warranty that services involving the repair or modification of existing tangible goods or property will be performed in a good and workmanlike manner.

34. Defendants breached this implied warranty of good and workmanlike performance by failing to perform the restoration services in a competent and effective manner, or by failing to perform them at all, despite their representations of being experienced and capable.

35. As a direct and proximate result of Defendants breach of the implied warranty of good and workmanlike performance, Plaintiff has suffered actual damages, exceeding $250,000.00.

36. Defendants' conduct was committed knowingly and/or intentionally, entitling Plaintiff to recover mental anguish damages and up to three times the amount of economic damages.

C. **BREACH OF CONTRACT**

37. Plaintiff refers to and adopts all foregoing paragraphs as if fully set forth herein.

38. Plaintiff entered into a valid and enforceable contract for the restoration of the Chevelle with Melton and the DBA Defendants. The essential terms included Defendants' agreement to perform restoration services and purchase parts, and Plaintiff's agreement to pay for said services and parts.

39. Plaintiff fully performed his obligations under the contract by providing Defendants with approximately $230,000.00 as agreed.

40. Defendants breached the contract by failing to perform the agreed-upon restoration work, failing to purchase the promised parts, and failing to account for or return the

funds provided.

41.    As a direct and proximate result of Defendants' breach, Plaintiff has suffered damages in the amount of $230,000.00, representing the funds paid, plus other incidental and consequential damages.

### D.    COMMON LAW FRAUD

42.    Plaintiffs refer to and adopt all foregoing paragraphs as if fully set forth herein.

43.    The Defendants made material misrepresentations of fact to Plaintiff, including but not limited to:

    i.    Representing that funds provided by Plaintiff would be used for the purchase of specific parts for the Chevelle restoration;

    ii.    Representing that funds provided would be used for labor on the Chevelle restoration; and

    iii.    Representing that they possessed the capability and intent to complete the restoration project as agreed.

44.    These misrepresentations were false.

45.    The Defendants knew these representations were false at the time they were made, or made them recklessly without any knowledge of their truth and as a positive assertion.

46.    The Defendants made these misrepresentations with the intent that Plaintiff would rely upon them and provide them nearly $230,000.00.

47.    Plaintiff justifiably relied on the Defendants' representations and omissions and, as a result, provided the Defendants nearly $230,000.00.

48.    As a direct result of this reliance, Plaintiff suffered injury and pecuniary loss.

49.     The Defendants' conduct was willful, wanton, or malicious, entitling Plaintiffs to exemplary damages.

### E.     NEGLIGENT MISREPRESENTATION

50.     Plaintiffs refer to and adopt all foregoing paragraphs as if fully set forth herein.

51.     In the course of their business and in a transaction in which they had a pecuniary interest, the Defendants supplied false information to the Plaintiff through both express statements and material omissions.

52.     These representations were made for the guidance of Plaintiff in their business transaction of the restoration of the Chevelle.

53.     The Defendants failed to exercise reasonable care or competence in obtaining or communicating accurate information about the business transaction.

54.     Plaintiffs suffered pecuniary loss by justifiably relying on the Defendants' false information and omissions.

### F.     NEGLIGENCE AND GROSS NEGLIGENCE

55.     Plaintiff refers to and adopts all foregoing paragraphs as if fully set forth herein.

56.     Defendants owed a duty to Plaintiff to exercise ordinary care in the performance of the agreed-upon restoration services and the handling of funds provided for that purpose.

57.     Defendants breached this duty by, among other things, failing to properly manage and utilize the funds provided, failing to purchase parts, failing to perform work, and converting Plaintiff's funds.

58.     Defendant's breaches of duty were a direct and proximate cause of Plaintiff's damages.

59. As a direct and proximate result of Defendants' negligence, Plaintiff has suffered damages in the amount of $250,000.00, plus other incidental and consequential damages.

60. **Gross Negligence.** The negligent conduct described herein, when viewed objectively from the Defendan's standpoint, constituted an extreme degree of risk due to the high probability and magnitude of potential harm. Defendants possessed actual, subjective awareness of such risk but consciously disregarded it, proceeding with indifference to the Plaintiff's rights, safety, and welfare.

61. Plaintiff's injuries resulting from Defendants' gross negligence entitles Plaintiff to exemplary damages under common law and under Texas Civil Practices & Remedies Code §41.003.

### G. CONVERSION

62. Plaintiff refers to and adopts all foregoing paragraphs as if fully set forth herein.

63. Plaintiff owns or has the right to possession of certain personal property, specifically, the Chevelle and over $225,000.00, provided to the Defendants for the express and limited purpose of purchasing parts and providing labor for the restoration of the Chevelle.

64. Defendants wrongfully exercised dominion and control over these funds and the Chevelle inconsistent with Plaintiff's rights, by converting them for unauthorized purposes rather than using them for the agreed-upon parts and labor for the Chevelle.

65. Plaintiff demanded return of the funds, and the Chevelle, but Defendants refused.

66. As a direct and proximate result of Defendants' unlawful conversion, Plaintiff has suffered actual damages in an amount exceeding $225,000.00, including, but not limited to, the value of the converted funds, the value of the Chevelle, and other incidental and consequential damages as further described herein.

**H.    CIVIL CONSPIRACY**

67.    Defendants, Steve Melton, Amanda Melton, and the DBA companies, combined to accomplish an unlawful purpose or a lawful purpose by unlawful means.

68.    The object of the conspiracy was to defraud Plaintiff and convert his funds.

69.    There was a meeting of the minds on the object or course of action.

70.    Defendants committed an unlawful overt act in furtherance of the conspiracy, including the false representations, receipt of funds, and conversion of funds as detailed above.

71.    As a direct and proximate result of the conspiracy, Plaintiff has suffered damages over $250,000.00, along with other consequential damages.

72.    Defendants' conduct was malicious, oppressive, and/or grossly negligent, entitling Plaintiff to exemplary damages.

**I.    INTENTIONAL INFLICITON OF EMOTIONAL DISTRESS**

73.    Plaintiff refers to and adopts all foregoing paragraphs as if fully set forth herein.

74.    Defendants acted intentionally or recklessly.  Their conduct, as described herein, was extreme and outrageous, exceeding all bounds of decency and utterly intolerable in a civilized community.  Specifically, Defendants engaged in a prolonged and calculated scheme to defraud Plaintiff of a substantial sum of money, knowing that such actions would cause severe emotional distress.

75.    Defendants' actions caused Plaintiff severe emotional distress.  Plaintiff suffered, and continues to suffer, profound mental anguish, anxiety, and distress as a direct result of Defendants' fraudulent and egregious conduct, including but not limited to financial devastation, loss of trust, and significant personal turmoil.

76. The emotional distress suffered by Plaintiff was severe, of a nature that no reasonable person could be expected to endure.

77. As a direct and proximate result of Defendants' intentional or reckless conduct, Plaintiff has suffered damages, including but not limited to mental anguish, for which he seeks monetary compensation.

## VII. <u>DAMAGES</u>

78. **Actual Damages.** As a direct and proximate result of Defendants' wrongful actions and inactions, Plaintiff has sustained actual damages, including economic damages of at least **$252,859.34**. Plaintiff seeks recovery of all actual damages, including economic damages, consequential damages, and any other damages allowed by law.

79. **Mental Anguish Damages.** Plaintiff seeks recovery of mental anguish damages under the DTPA and for Intentional Infliction of Emotional Distress.

80. **Exemplary Damages.** Plaintiff seeks exemplary damages from Defendants for Defendant's willful, malicious, and/or grossly negligent conduct, specifically with respect to the Defendants' fraud and gross negligence alleged herein.

81. **Exemplary Damages.** Plaintiff seeks seeks statutory multiplied damages under the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA") for injuries that resulted from Defendant's knowing and intentional violations of the DTPA, as more fully set forth herein.

82. **Attorneys' fees and costs, and court costs.** Plaintiff seeks recovery of reasonable and necessary attorneys' fees, expert witness fees, and costs of court incurred in prosecuting this action, as allowed by law, including but not limited to the DTPA

## IX.    RULE 193.7 NOTICE

83.    Pursuant to Rule 193.7 of the Texas Rules of Civil Procedure, Plaintiff hereby gives notice to all parties that they intend to use all documents produced in response to written discovery in any pre-trial hearing and at trial.

## X.    JURY DEMAND

84.    Plaintiff hereby demands a jury trial.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, RICHARD KEVIN BROWN, prays that Defendants be cited to appear and answer herein, and that upon final trial, Plaintiff have judgment against Defendants for:

a.    Actual damages, including economic damages in the amount of **$252,859.34**;

b.    Consequential damages;

c.    Mental Anguish damages;

d.    Exemplary damages;

e.    Treble damages as provided by the DTPA;

f.    Pre-judgment and post-judgment interest at the maximum legal rate;

g.    Reasonable and necessary attorneys' fees;

h.    Expert witness fees;

i.    Costs of court; and

j.    Such other and further relief, general and special, at law or in equity, whether pled or unpled, to which Plaintiff may be justly entitled.

Respectfully submitted,

THE ALLEN FIRM, P.C.

By: /s/ *Cassie M Meyer*

    Cassie M. Meyer
    Texas Bar No. 24140549
    Email:  cassie@allenlawfirm.com
    181 S. Graham Street
    Stephenville, Texas 76401
    Tel. (254) 965-3185
    Fax. (254) 965-6539

    ATTORNEYS FOR PLAINTIFF